# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 12-00649-TLM |
| JAY P. CLARK, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JEREMY GUGINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 15-06006-TLM |
| ) | |
| DAN KERSLAKE and ) | |
| JUAN MIGUEL AYARZA, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

Before the Court is a motion for summary judgment filed by Dan Kerslake ("Kerslake") one of the two defendants in this § 549 avoidance action.[1] Doc. No. 11 ("Motion"). Opposed by the plaintiff, chapter 7 trustee, Jeremy Gugino ("Trustee"), the Motion was argued at hearing on November 2, 2015. The Court

---

[1] Unless otherwise indicated, all statutory references in this Decision are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and citations to "Rules" are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

determines that the Motion is well taken and will be granted.

## BACKGROUND AND FACTS

The undisputed facts are established by the parties' submissions, and by the record in this adversary proceeding, the underlying bankruptcy case, and a related adversary proceeding.[2]

Jay Clark ("Debtor") was a chapter 12 debtor, having filed his petition for relief on March 27, 2012. During the chapter 12 case, Debtor remained in possession of the property of the estate. Debtor was also the *de facto* "manager" (though neither a member nor a managing member) of an Idaho limited liability company, Clark's Crystal Springs Ranch, LLC ("CCSR"). Though Debtor had improperly filed his case as Jay Clark "dba Crystal Springs Ranch," CCSR was not a bankruptcy debtor.[3]

During the time the chapter 12 case was pending, Kerslake completed the purchase of a Massey-Ferguson 1105 Tractor ("Tractor") from CCSR for $11,400.00. The May 10, 2013 check, issued in payment for the Tractor, was made payable to "Clarks Crystal Springs Ranch LLC" and was endorsed by "Clark's Crystal Springs Ranch LLC by J.P. Clark Manager." Doc. No. 11-2.

---

[2] The Court takes judicial notice of its files and records in each. Fed. R. Evid. 201.

[3] A more fulsome explanation of the facts and history surrounding Debtor and CCSR is contained in this Court's decision in *Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 525 B.R. 107 (Bankr. D. Idaho Dec. 30, 2014) (the "2014 Decision"). The 2014 Decision is discussed further below.

MEMORANDUM OF DECISION - 2

On May 31, 2013, the Court converted Debtor's case to a chapter 7 liquidation under § 1208(d) based on its finding that Debtor had committed fraud in connection with the case, and Trustee was appointed.[4] Days later, on June 7, 2013, Trustee commenced an adversary proceeding against CCSR and its sole member, the Clark Farms Family Trust ("Trust"), seeking a judgment substantively consolidating CCSR and the Trust with Debtor's estate. *See* Adv. No. 13-06016-TLM. The 2014 Decision was entered following an August 2014 trial. That decision and the related January 5, 2015 judgment substantively consolidated CCSR and the Trust with the Debtor. Trustee requested, and the Court granted, such consolidation to be effective *nunc pro tunc* to March 27, 2012.[5]

Under that judgment, the assets of CCSR and/or the Trust were to be considered as assets of Debtor's estate and administered by Trustee. Any creditors of CCSR and/or the Trust were to be treated as if they were creditors of the Debtor. And the judgment also provided that Trustee retained any chapter 5

---

[4] The Hon. Jim D. Pappas was the presiding bankruptcy judge from the inception of the bankruptcy case through June 10, 2013.

[5] In this Decision, the Court will use the term *nunc pro tunc* (the term chosen by Trustee in seeking and obtaining judgment) as well as the term "retroactive." Precisely defined, *nunc pro tunc* means "now for then." Black's Law Dictionary at 1237 (10th ed. 2014). The function of a *nunc pro tunc* order is to record an order that was actually made but which, through some oversight or inadvertence, was never entered, thus correcting the record. *In re Kroeger Props. & Dev., Inc.*, 57 B.R. 821, 822 n.1 and 824 (9th Cir. BAP 1986) (Elliott, J., concurring and dissenting). It has become in many ways synonymous with entry of orders with retroactive effect even though there was no prior request or failure to document an actual but unrecorded ruling.

MEMORANDUM OF DECISION - 3

avoidance powers. It did not, though, address the extent of those powers or anything about their exercise.[6]

In that adversary proceeding, Trustee's June 7, 2013 complaint named several "John Doe" defendants. He alleged:

> Defendant Does 1-10 are as-yet unknown individuals or entities who may have been the recipient of transfers as further described below. The exact identity of these Defendants is currently unknown. However, in the event the Trustee learns the identity of these individuals or entities, he will seek to amend this Complaint to properly name those individuals or entities.

Adv. No. 13-06016-TLM, Doc. No. 1 at 3, ¶ 11. He also alleged: "Upon information and belief, the Company [CCSR] has been selling certain assets during the pendency of the Debtor's Chapter 12 proceeding." *Id.* at 4, ¶ 22. However, Trustee never amended the complaint, as he had indicated in ¶ 11 he would, to identify any of the John Doe defendants that were believed to have received transfers from CCSR. Trustee also never issued any notice to Kerslake—as a party in interest in the chapter 7 case, or otherwise—indicating Trustee's intent to assert substantive consolidation theories *nunc pro tunc* or pursue transfer avoidance actions based on retroactive consolidation.

Following entry of the substantive consolidation ruling on December 30, 2014 and judgment on January 5, 2015, Trustee promptly initiated the instant

---

[6] The 2014 Decision and subsequent judgment are on appeal to the Ninth Circuit Bankruptcy Appellate Panel. *See* BAP No. ID-15-1010. There is no stay pending appeal.

MEMORANDUM OF DECISION - 4

action, filing the complaint on March 13, 2015, a little more than two months after the judgment.[7]

In the present adversary proceeding, Trustee's complaint alleges that CCSR owned the Tractor as of March 27, 2012 (Debtor's petition filing date) and, in return for $11,400, CCSR transferred the Tractor to Kerslake on or around May 15, 2013. Trustee contends that, given the *nunc pro tunc* effect of the judgment entered upon the 2014 Decision, this May 2013 transfer of equipment by CCSR is rendered a post-petition transfer avoidable under § 549(a).[8] Nothing has ever been alleged or submitted to suggest this was anything other than an arm's length transaction between CCSR and Kerslake. Trustee's action is predicated solely on the timing of the transfer and the lack of express Court authorization or Code sanction.

---

[7] In addition to the instant adversary proceeding seeking transfer avoidance against Kerslake and Ayarza, Trustee filed several similar actions. The first, *Gugino v. Sorensen*, Adv. No. 15-06002-TLM, was filed on Jan. 21, 2015, just 16 days after judgment. It alleges a § 549 action related to a baler and combine transferred by CCSR for $105,000. *Gugino v. Turner, et al.*, Adv. No. 15-06007-TLM, was filed on March 13, 2015 along with the instant suit. It alleged § 549 actions against several defendants. However, the transfers there at issue occurred more that two years earlier and thus were beyond the § 549(d) statute of limitations for such actions. Trustee requested equitable tolling of that limitation period, a proposition this Court rejected as to two of the defendants based in large part on the inequity of the situation. *See Gugino v. Turner (In re Clark)*, 2015 WL 5545258 (Bankr. D. Idaho Sept. 18, 2015). Subsequently, that action was dismissed as against the other defendants by stipulation. And on March 17, 2015, *Gugino v. John and Scott Clark*, Adv. No. 15-06008-TLM, was filed alleging, *inter alia*, § 549 actions against Debtor's father and brother regarding multiple items of equipment.

[8] Because this suit was filed on March 13, 2015 and the challenged transfer to Kerslake was in May 2013, the § 549(d) limitation that was at issue in Adv. No. 15-06007-TLM and discussed in the preceding footnote is not implicated.

MEMORANDUM OF DECISION - 5

## DISCUSSION AND DISPOSITION

### A.    Summary judgment standards generally

This Court has summarized:

> Federal Rule of Civil Procedure 56, incorporated in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056 states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
>
> The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact, after which the opposing party must provide evidence establishing a genuine issue of material fact. *Poole v. Davis (In re Davis)*, 2012 WL 4831494, *2 (Bankr. D. Idaho Oct. 10, 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). But even if the opposing party fails to establish the existence of disputed facts, the moving party must still establish it is entitled to judgment as a matter of law. *See North Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1227–28 (9th Cir. 1997) (holding the trial court erred by resting its grant of summary judgment on the opposing party's failure to file a response).
>
> Additionally, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 861 (9th Cir. 2011) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). And all justifiable inferences must be drawn in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

*Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 2014 WL 2895428,

*2 (Bankr. D. Idaho Jun. 25, 2014) (footnotes omitted).

As noted, the issues are framed by the parties' submissions in this case, and

by the events in the underlying chapter 7 case and the substantive consolidation

MEMORANDUM OF DECISION - 6

adversary proceeding. Not only are the facts largely undisputed, the critical, material facts are not subject to genuine dispute. The arguments are legal.

Kerslake's Motion is based on equity. He contends Trustee should not benefit from the equitable relief he asked for and was afforded by this Court's *nunc pro tunc* ruling when Trustee gave Kerslake no notice of the Trustee's request for *nunc pro tunc* substantive consolidation, or notice of his anticipated challenge to Kerslake's purchase of the Tractor as an avoidable "post" petition transfer.

Trustee asserts that, though the undisputed evidence "shows Kerslake's 'good faith' in purchasing the tractor," this is insufficient to provide a defense to a § 549(a) cause of action. In addition, Trustee discounts Kerslake's appeal to equity as nothing more than an improper "collateral attack" on the judgment granting *nunc pro tunc* substantive consolidation of CCSR in the underlying bankruptcy case.

### B. Exceptions to § 549(a) avoidance

Section 549 states:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –

> (1) that occurs after the commencement of the case; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) that is not authorized under this title or by the court.

MEMORANDUM OF DECISION - 7

>(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.
>
>(c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

As many courts have recognized, there is no good faith exception to the transfer of personal property in a § 549(a) avoidance action. *See Fursman v. Ulrich (In re First Prot. Inc.)*, 440 B.R. 821, 833 (9th Cir. BAP 2010) ("Since Congress chose to protect only good faith transferees of real property under § 549(c) and failed to mention good faith transferees of personal property, it must have intended that postpetition transfers of personal property be avoidable regardless of the knowledge or good faith of the transferee.").

Kerslake makes a slightly different argument. Analogizing the situation here regarding CCSR as akin to an involuntary petition, Kerslake suggests that the

MEMORANDUM OF DECISION - 8

good faith protection afforded by § 549(b) should be applied here to insulate the challenged transaction. He submits that the time from the filing of the petition to the entry of a substantive consolidation judgment is of the same character as that between an involuntary petition and the entry of an order for relief.[9]

Section 549(b) recognizes that there is a "gap period" in involuntary cases where a debtor remains in possession of its property and is capable of disposing of it. *Id.*, *see also* § 303(f) (providing that, unless the court orders otherwise, the business of the debtor may operate following the filing of an involuntary petition and before entry of an order for relief, "and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."); 2 Collier on Bankruptcy ¶ 303.22 at 303–22 (Alan N. Resnick & Henry J. Sommer eds., 16th ed) ("Section 303(f) was designed to make sure that the involuntary filing does not affect the debtor or its business."). If in making a gap period transfer the debtor receives value, the estate and its creditors are not harmed to the extent of that value. Thus, § 549(b) provides that "the trustee may not avoid" such a transfer in the gap period "to the extent any value . . . is given . . . in exchange for such transfer."[10] The purpose and intent of

---

[9] CCSR's ability to make transfers, including sales of property for fair consideration, as here with Kerslake, ceased when the Court entered a TRO in Trustee's substantive consolidation action effective as of June 10, 2013. *See* Adv. No. 13-06016-TLM, Doc. No. 5. The transfer here occurred in May 2013, prior to the TRO.

[10] Excluded from the § 549(b) safe harbor are transfers that satisfy or secure a prepetition debt. That situation is not presented here.

MEMORANDUM OF DECISION - 9

§ 549(b) is to protect exchanges for value in order to permit continued operation of the business. *See, e.g.*, *In re C.W. Mining Co.*, 2009 WL 1362366, *2 (Bankr. D. Utah May 8, 2009) (citing *In re Fort Dodge Creamery Co.*, 121 B.R. 831, 835 (Bank. N.D. Iowa 1990) ("Section 549(b) is intended to protect contemporaneous exchanges for value to permit continued operation of the business during the 'gap' period.").[11]

There is a persuasiveness in Kerslake's analogy. The same policy concerns surrounding the enactment of § 303(f) and § 549(b) are present when a non-debtor operates a business after an affiliated entity files bankruptcy, a filing that may or may not result in the non-debtor being pulled into that bankruptcy through substantive consolidation. But the instant case does not fit neatly into the "involuntary petition–gap period" provisions of the Code. The underlying concept, however, is considered in the Court's evaluation of the equities below.[12]

---

[11] The Bankruptcy Appellate Panel recognized these principles in *Mastro v. Rigby (In re Mastro)*, 2011 WL 3300370, *3 and *6 (9th Cir. BAP Mar. 1, 2011)

[12] Another argument in opposition to avoidance might be made under § 549(a)(2)(B) on the basis that the transfer was "authorized under this title." This argument flows from the idea that CCSR was consolidated with Debtor as of March 27, 2012, and should thus be considered to be—like Debtor—a debtor in possession under chapter 12. Given such a debtor's powers to control property of the estate and conduct business, § 363(c)(1) would allow sales of property to occur without notice or hearing if done in the ordinary course of business. However, Kerslake did not raise this argument and the parties did not address it. In addition, the record for summary judgment purposes in this adversary proceeding concedes the arms-length, good faith nature of the transaction, but it does not address CCSR's ordinary course of business or other circumstances regarding the sale that may be relevant to § 363(c)(1)'s operation.

MEMORANDUM OF DECISION - 10

### C. Equitable arguments

Kerslake notes, and Trustee does not dispute, that the purchase from CCSR was made in good faith and without notice of any bankruptcy. But, recognizing a good faith defense under § 549(a) is limited to real property transfers, Kerslake argues not for a statutory defense but, instead, an equitable one. He appeals to this Court's equitable powers and seeks, in effect, a qualification to or an exception from this Court's *nunc pro tunc* ruling. He does so now because, due to lack of notice, he was unable to raise it at the time of the Court's consideration of Trustee's requested judgment.

Kerslake points out the obvious inequity of avoiding an arms-length transaction with a good faith purchaser when CCSR was not in bankruptcy at the time of the transfer, even if such strict liability would attend such a transfer of personal property with a debtor who is in a bankruptcy case. He also focuses on Trustee's failure to provide any notice to the John Doe transferee defendants that substantive consolidation of CCSR was sought *nunc pro tunc*, and that Trustee did so with intent that through such retroactive effect such defendants could (and would) be pursued for avoidable "post" petition transfers.

Other courts have expressly allowed anyone without notice to argue the validity and applicability of a *nunc pro tunc* ruling if pursued in a subsequent adversary proceeding. *See Goldstein v. BRT, Inc. (In re Universal Mktg., Inc.)*, 460 B.R. 828, 831 n.7 (Bankr. E.D. Pa. 2011) (noting that it had placed a

MEMORANDUM OF DECISION - 11

provision within its *nunc pro tunc* substantive consolidation order that "[i]n connection with any adversary proceeding, any party without notice . . . may contest the applicability of this [*nunc pro tunc*] paragraph . . . on the basis of due process." (citing Case. No. 09–15404, Doc. No. 410)). While this Court did not expressly provide for the ability of a party without notice to contest the applicability of its *nunc pro tunc* ruling, neither did it prohibit it.

Trustee responds that such an argument is an improper collateral attack on this Court's substantive consolidation judgment. Under the circumstances here, it is not. When a party does not receive notice of actions affecting its rights, that party fails to receive due process. The fundamental requirement of due process, the right to be heard, is meaningless without notice. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As stated in *Mullane*: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. Thus, where due process is lacking, any resulting judgment is open to attack.

In 2014, Trustee did not provide the Court with details regarding any specific transfers by CCSR that would potentially be subject to § 549(a) avoidance actions. While he alluded to improper transfers in his complaint, and even alleged the existence of John Doe defendants receiving such transfers, he never amended

MEMORANDUM OF DECISION - 12

the complaint to name the initial transferees. Nor did he provide the Court with details regarding the extent, scope or circumstances of any of those alleged transactions. And Trustee never provided those potential defendants, including Kerslake, with notice or an opportunity to weigh in on the requested remedy of *nunc pro tunc* consolidation that would expose them to the strict liability of § 549(a).

Trustee's request for substantive consolidation, and for *nunc pro tunc* effect, appealed to the Court's equitable powers. *See Clark*, 525 B.R. at 126–28 (discussing this "uncodified, equitable doctrine" and "the historical precursors of, and the equitable powers underlying, the bankruptcy court's ability to order substantive consolidation"). This Court stated, in previously rejecting Trustee's request in Adv. No. 13-06007-TLM for equitable tolling of the two-year limitation period of § 549(a):

> An appeal to equity generally requires no inequitable behavior by the proponent. It is extremely difficult to credit Trustee with the benefit of an equitable principle where he could have, and did not, act equitably to the defendants even though presented with the knowledge and opportunity to do so.

*Gugino v. Turner (In re Clark)*, 2015 WL 5545258, at *6.

In discussing the application of equitable principles in bankruptcy cases and before bankruptcy courts as "courts of equity"[13] (though on a subject different

---

[13] *See Katchen v. Landy*, 382 U.S. 323, 327 (1966) (bankruptcy courts "are essentially courts of equity").

MEMORANDUM OF DECISION - 13

from that here), the court in *Fulton Co. Dep't. of Human Servs. v. Dodd (In re Dodd)*, 276 B.R. 817 (Bankr. N.D. Ohio 2001), notes that equitable powers are "circumscribed in a very important respect: a bankruptcy court is not to apply its equitable powers unless the party to be benefitted has acted in a manner that is entirely consistent with basic principles of equity jurisprudence." *Id.* at 820 (citations omitted). Further:

> A basic tenet of equity jurisprudence is that the party seeking equitable relief must come to the court with "clean hands." The essence of this doctrine is that no person can obtain affirmative relief in equity with respect to a transaction in which he or she has been guilty of inequitable conduct[.] . . . This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.

*Id.* at 821 (citations omitted); *see also Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868–69 (9th Cir. 2005).

The Court appreciates that, unlike in *Gugino v. Turner*, here it is not Trustee who seeks equitable relief; rather, it is a defendant, Kerslake, who urges it in defense to the statutory action. However, the right that Trustee now asserts (avoidance of a transfer by CCSR to Kerslake that was made almost 2 years prior to the adjudication and entry of the substantive consolidation judgment) was acquired in pressing for *nunc pro tunc* effect of the judgment without ever notifying parties, such as Kerslake, who would be impacted by that retroactivity. As noted in *Turner v. Turner*, 809 A.2d 18, 58 (Md. Ct. Spec. App. 2002), "there

MEMORANDUM OF DECISION - 14

must be a nexus between the misconduct and the transaction [at issue], because 'what is material is not that the plaintiff's hands are dirty, but that [she] dirties them in acquiring the right [she] now asserts.'" (citations omitted).

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945), stated:

> "[H]e who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one *tainted with inequitableness* or bad faith *relative to the matter in which he seeks relief*[.]

*Id.* at 814–15 (emphasis added); *see also Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244–45 (1933) ("The governing principle is 'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine[.]'" (citing Pomeroy, Equity Jurisprudence § 397 (4th ed.))).

The inequitableness here was the lack of notice to John Doe defendants, despite the complaint's representation that such parties would be named and provided notice, and the seeking of the *nunc pro tunc* effectiveness of the judgment followed almost immediately by § 549(a) suits against those non-notified parties.

As explained in *Van Curen v. Great Am. Ins. Co. (In re Hat)*, 363 B.R. 123 (Bankr. E.D. Cal. 2007), "[n]ot every wrongful act constitutes unclean hands. But

MEMORANDUM OF DECISION - 15

the misconduct need not be a crime or an actionable tort.  Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." *Id.* at 139 (citations omitted).  Trustee failed to name Kerslake as a John Doe defendant, or to provide Kerslake as a potential transfer avoidance target with notice and an opportunity to be heard in regard to the *nunc pro tunc* aspects of the requested judgment.  The Court does not ascribe motive nor opprobrium to these failures.  They could have been the result of negligence or thoughtlessness rather than intentional.  But the inequitableness of that conduct is sufficient, under the jurisprudence, to constitute unclean hands.

Section 105(a) codifies the Court's equitable powers.  While the Court may not use those powers to contravene express provisions of the Code, *see Law v. Siegel*, __ U.S. __, 134 S.Ct. 1188, 1197 (2014), "where the proposed action is not expressly circumscribed and instead is in harmony with other provisions of the Bankruptcy Code as well as its overriding purpose, Section 105(a) provides a bankruptcy court power to act." *In re Escalera Res. Co.*, 2015 WL 7351396, *4 (Bankr. D. Colo. Nov. 9, 2015).  The Court concludes such a situation is presented under the circumstances of this case.  The granting of summary judgment to Kerslake on these equitable grounds is, in the Court's view, consistent with § 105(a) and furthers, rather than contravenes, the provisions of the Code.  It must be recalled that, while § 549(a) is a Code provision, its assertion here is solely the result of, and rooted in, Trustee's invocation of the equitable doctrine of

MEMORANDUM OF DECISION - 16

substantive consolidation *nunc pro tunc*.

The Court's ability to consider the application of the retroactive aspects of the judgment—as to this defendant and his Motion and under the record here presented[14]—is part of a broad discretion. As noted in another context:

> The Ninth Circuit has observed that the court's discretion to revisit past orders is broad in the absence of "vested" rights. *Int'l Fibercom*, 503 F.3d at 944. Moreover, Fed. R. Civ. P. 60(b) conditions all relief on "such terms as are just" which is understood to implicate equitable principles. 11 Wright & Miller, *Fed. Prac. & Proc.* § 2857. The application of equitable principles includes the question whether intervening equities make relief inappropriate, which is often couched in terms of whether "prejudice" would result from granting relief. *Id.* at nn. 5–6; *see also In re Staff Inv., Co.*, 146 B.R. 256, 263 (Bankr. E.D. Cal. 1993) ("Intervening equities, potential hardship to other persons, and prejudice to a party can vitiate an otherwise strong argument" for Rule 60 relief).

*Wood & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 730 (9th Cir. BAP 2008).

## CONCLUSION

For the reasons set out in this Decision, the Court finds the Motion meritorious. Though the Court granted Trustee relief under the equitable doctrine

---

[14] The Court is not setting aside the *nunc pro tunc* aspects of the judgment. That would be improper since the judgment is on appeal, as earlier noted, and the Court cannot alter a judgment while the appeal pends. *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1190 (9th Cir. 2000). Nor need it alter the judgment because the equitable considerations applicable to Kerslake in the instant case have no applicability to the defendants in the substantive consolidation litigation, CCSR and the Trust, because both those defendants were on notice of the request *ab initio*.

Further, the equitable considerations addressed in this Decision support negating the retroactive aspects of the judgment as to Kerslake. Whether such considerations will apply to other creditors, parties in interest and/or adversary defendants will depend on the facts, and any contravening equities, regarding such parties.

MEMORANDUM OF DECISION - 17

of substantive consolidation, and imposed *nunc pro tunc* effect, the Court is not deprived of the ability to address and rectify the inequities established by Trustee's failure to provide notice to Kerslake under all the circumstances. Kerslake's Motion will be granted. His counsel may submit an appropriate form of order.

DATED: December 11, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 18